823 F.2d 553
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James Key ROBINSON, Petitioner-Appellant,
v.
Jim ROSE, Warden, Tennessee State Prison; and William Leech,
Attorney General for the State of Tennessee,
Respondents-Appellees.
 No. 86-5080
 United States Court of Appeals, Sixth Circuit.
 July 22, 1987.
 
 Before KEITH, KENNEDY and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner and two accomplices, Allen LeMay and Patricia Patterson, after a joint trial, were convicted in a Tennessee state court of offenses arising out of a robbery-murder. A third accomplice, Andrea Rice, entered a guilty plea to charges of second degree murder and armed robbery. The jury assessed petitioner's punishment at eighty years for first degree felony murder and thirty years for armed robbery. The Tennessee Court of Criminal Appeals vacated petitioner's armed robbery conviction on the ground that it was the felony underlying the felony murder conviction, and modified his felony murder sentence to life imprisonment.
 
 
 2
 The incident leading to petitioner's convictions involved a man named John Holland who was acquainted with Patterson. She, petitioner, LeMay, and Rice determined that Holland was a prime target for robbery. They prepared themselves by obtaining ladies hosiery to be used as face masks, gloves, and Holland's unlisted telephone number. Petitioner carried a Knife, and LeMay was armed with a pistol. The four proceeded to Holland's home, where the two women gained entry by pretending to be there for the purpose of Patterson introducing Rice to the victim. Once inside, one of them unlocked the kitchen door, and the men burst in wearing stocking masks and demanded money of Holland. Petitioner threw Holland to the floor, his hands were tied behind his back, and all four ransacked the house. They found $70 in cash, weapons, and a collection of coins. These items were loaded into the car by Patterson, LeMay and Rice, while petitioner stayed behind for the express purpose of doing away with Holland in order to avoid identification. The other three became impatient and LeMay re-entered the house. Neither man was wearing a stocking mask when they returned to the car. The next morning Holland was found dead, having suffered stab wounds and strangling by a length of pantyhose.
 
 
 3
 Petitioner first contends that he was denied due process of law by the Tennessee Court of Criminal Appeals when it increased his jury-imposed sentence of eighty years' imprisonment to life imprisonment. The trial judge had instructed the jury that the range of punishment was for life or for some period in excess of twenty years. Subsequently, the Tennessee Supreme Court, in another case, declared that the only penalty for first degree murder was life imprisonment, pointing to a 1915 statute. The Court of Criminal Appeals relied upon the Supreme Court case in modifying petitioner's sentence.
 
 
 4
 The district court correctly observed that, under Tennessee law, petitioner had the statutory right to have the jury set the extent of punishment within the limits prescribed by the legislature, not the right to be sentenced by a jury in any event. Accordingly, concluded the district court, petitioner's state law sentencing rights were not violated when the Court of Criminal Appeals modified his sentence to impose the only permissible sentence for his crime.
 
 
 5
 Petitioner concedes that the only legal sentence for first degree murder was life imprisonment. But, he argues that the Tennessee appellate court was without power to increase a sentence from a term of years to a life sentence. This, petitioner contends, it because the eighty-year sentence is lower than the legal minimum and Tennessee has consistently followed the rule that, where a jury fixes punishment higher or lower than that authorized by statute, the verdict is a nullity. Petitioner concludes that there were only two options available to the Tennessee appellate court: (1) providing the state agreed, modify the conviction to second degree murder and impose the minimum sentence for that offense; or (2) if the state did not agree, reverse the conviction and remand for a new trial.
 
 
 6
 The state responds that the cases cited by petitioner to support his position fall into three categories: (1) those where the trial court erroneously instructed the jury as to punishment, see Judkins v. State, 224 Tenn. 587, 458 S.W.2d 801 (1970); Bowmer v. State, 157 Tenn. 124, 6 S.W.2d 326 (1928); (2) those where the trial court correctly instructed the jury as to punishment and the jury returned a sentence below the minimum prescribed by law, see, e.g., Jenkins v. State, 509 S.W.2d 240 (Tenn. Crim. App. 1974); or (3) those where the trial court correctly instructed the the jury returned a sentence above the maximum prescribed by law, See Van Pelt v. State, 193 Tenn. 463, 246 S.W.2d 87 (1952); Nashville Ry. & Light Co. v. State, 144 Tenn. 466, 234 S.W. 327 (1921).
 
 
 7
 The state argues that, in each of these cases, there was a permissible range of punishment which the jury could consider. In petitioner's case, however, there was only a single valid punishment available--life imprisonment. By modifying the sentence, the appellate court did not intrude upon any statutory discretion granted the jury in meting out a punishment.
 
 
 8
 There is, of course, no federal constitutional right to have one's sentence imposed by a jury in a state criminal trial. Petitioner argues that, prior to his case, no Tennessee appellate court had ever increased a sentence levied by a jury. That may well be the case where juries were faced with a range of choices in their selection of a penalty. But, here, the jury had no discretion to select a penalty, and the Court of Criminal Appeals has said that, under those circumstances, Tennessee appellate courts have the power to correct an erroneous jury sentence by imposing the only legal sentence available, albeit a higher one. We have been presented with no Tennessee authorities indicating that the court acted arbitrarily and in contravention of state legal procedures established for such an event. Nor was petitioner prejudiced by the appellate court's action since, had the trial court applied the proper sentencing law, it would have instructed the jury that a life sentence was the only one it could impose. Accordingly, the sentence was set in accordance with the process due petitioner, and the appellate court did not interfere with any legitimate liberty interest of petitioner.
 
 
 9
 Petitioner next argues that his sixth amendment right to confrontation was abrogated by the admission of a non-testifying co-defendant's confession, and that the Tennessee trial court's error in this regard was not harmless, as the district court believed.
 
 
 10
 Here, both Robinson and a non-testifying co-defendant confessed, but each placed the responsibility upon the other for actually killing the victim. As read at trial, the names of all other accomplices were omitted from the co-defendant's confession and the word 'blank' substituted. The Tennessee Court of Criminal Appeals, relying upon the Supreme Court's opinion in Bruton v. United States, 391 U.S. 123 (1968), concluded that there had been a violation of petitioner's sixth amendment right to confrontation since, in spite of the redaction, other evidence at the trial 'pointed so unerringly to the defendants that it was an impossibility for any juror to mistake the fact that the blanks in the redacted confessions referred only to them, and no one else.' The Court concluded, however, that the error was rendered harmless by the overwhelming evidence of petitioner's guilt. The district court agreed with this analysis.
 
 
 11
 We agree with the district court's conclusion that any error in admitting the confessions was rendered harmless by overwhelming evidence of petitioner's guilt. However, we disagree with that court's conclusion that there was a sixth amendment violation, in view of the intervening opinion of the United States Supreme Court in Richardson v. Marsh, 107 S.Ct. 1702 (1987). In that case, the Supreme Court held that where, as here, a redacted confession is not incriminating on its face, but becomes so only when linked with evidence introduced later at trial, the Confrontation Clause is not violated by admission of the confession.
 
 
 12
 The judgment of the district court is affirmed.